# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| MISSOURI BANK AND TRUST COMPANY OF KANSAS CITY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 10-00123-CV-W-DGK |
| v. | ) ) ) | |
| ONEBEACON INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff Missouri Bank and Trust Company of Kansas City's ("MBT") Motion for partial summary judgment[1] and Suggestions in Support. Docs. 12-13. The Court has reviewed this Motion in conjunction with Defendant OneBeacon Insurance Company's Suggestions in Opposition and Plaintiff's Reply. Docs. 18-19. For the reasons discussed below, Plaintiff's Motion is GRANTED.

**Background**

On October 20, 2008, OneBeacon sold MBT a Financial Institution Bond ("FIB") for a premium in excess of $18,000. The FIB took effect the next day and is in place through October 21, 2011. OneBeacon also issued MBT a Management and Professional Liability Policy ("MPLP") for a premium in excess of $19,000. On May 6, 2009, MBT employees executed an international wire transfer to Korea Exchange Bank in the amount of $196,575. After discovering that transfer request was forged and that the transferor customer had not actually

---

[1] Specifically, Plaintiff seeks summary judgment "concluding on the basis of the undisputed facts material to the issue that Defendant…could not permissibly deny any 'loss' resulting from the International Wire Transfer Request faxed to Missouri Bank in May 2009 on the grounds that [it] was an 'Electronic Record' and not a 'Writing' or 'Written' for purposes of the [Financial Institution Bond]…" Doc. 12. The Court interprets this as a request for summary judgment on Count I.

requested it, MBT reversed the transfer and refunded the customer's account.  However, Korea Exchange Bank had already released the funds.

MBT asserts that the FIB requires OneBeacon to indemnify it against this loss. OneBeacon asserts that the wire transfer request does not qualify as a "Writing" or something "Written" under the FIB.  Rather, OneBeacon asserts both that the fax was an "Electronic Record" and that this situation is governed by a different section of the FIB—insuring agreement (K) rather than (D).  MBT filed this action for breach of contract for both the FIB and the MPLP, but moves for summary judgment only on Count I, related to the FIB.

## Standard

### A. Summary Judgment

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The party opposing summary judgment must do more than simply allege that there is "some metaphysical doubt as to the materials facts." *Matsushita Elec. Indus. Co.v . Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Rather, Rule 56(e) requires the party opposing summary judgment to "set out specific facts showing a genuine issue for trial." *Id.,* Fed. R. Civ. P. 56(e).  Local Rule 56.1(a) governs the filing of a motion for summary judgment in the Western District.

> "The suggestions in support of a motion for summary judgment shall begin with a concise statement of uncontroverted material facts. Each fact shall be set forth in a separately numbered paragraph. Each fact shall be supported by reference to where in the record the fact is established…Suggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine dispute exists…All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless *specifically controverted* by the opposing party."

2

Local Rule 56.1(a) (emphasis added). While the issue the Court is asked to decide is a legal issue, a statement of the undisputed material facts is helpful for background to the Court's ruling.

1. MBT is a Missouri banking corporation in good standing, with its principal place of business in Missouri. Doc. 12 at ¶ 1.

2. OneBeacon is a Pennsylvania corporation with its principal place of business in Massachusetts. It was authorized to do business in Missouri at all relevant times. Doc. 12 at ¶ 2.

3. On or about October 20, 2008, OneBeacon sold and issued the FIB to MBT, numbered 474-00-06-35-000. Doc. 12 at ¶ 3.

4. Under the terms of the FIB, OneBeacon agreed to indemnify MBT for certain losses in specified amounts pursuant to one or more different "insuring agreements" from October 21, 2008 to October 21, 2011. Doc. 12 at ¶ 4.

5. In consideration for this promise, MBT paid a premium in excess of $18,000. Doc. 12 at ¶ 5.

6. The FIB remains in effect and there have been no gaps in coverage. Doc. 12 at ¶ 6.

7. MBT received the wire transfer request at issue via fax on May 6, 2009 and it was printed for processing. Doc. 12 at ¶ 8-9.

8. Insuring agreement (D) of the FIB requires OneBeacon

"[T]o indemnify [MBT] for…[l]oss resulting directly from:
(1) Forgery, counterfeiting or alteration of, on, or in, any Negotiable Instrument (except an Evidence of Debt or Substitute Check), Acceptance, Withdrawal Order, Written receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit; or

(2) transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any Written instructions or advices directed to [MBT] and authorizing or acknowledging the transfer, payment, delivery or receipt of funds of Property, which instructions or advices purport to have been

signed or endorsed by any customer of [MBT] or by any banking institution, but which instructions or advices either bear a signature which is a Forgery or have been altered without the knowledge and consent of such customer of banking institution; or

(3) transferring, paying or delivering any funds or Property in good faith reliance upon any Substitute Check that bears a copy of a handwritten signature of any maker or drawer which is a Forgery.
A signature that is a mechanical or electronic reproduction of a handwritten signature produced by a mechanical check-writing machine or computer printer is treated the same as the handwritten signature. Any other Electronic Signature, however, is not treated the same as a mechanical or electronic reproduction of a hand-written signature and is not a Forgery under this Insuring Agreement.

Doc. 12 at ¶ 13, Doc. 12-1 at 7-8 (emphasis omitted).

9. The FIB includes the following definitions:

(33) Forgery means signing the name of another person or organization with a handwritten signature physically affixed to Writing with the intent to deceive.

(64) Withdrawal Order means a non-negotiable Written instrument…signed by a customer of the Insured authorizing the Insured to debit the customer's account in the amount of the funds stated therein.

(21) Electronic means relating to technology having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities.

(28) Electronic Record means information which is created, generated, sent, communicated, received or stored by electronic means and is retrievable in perceivable form.

(27) Electronic and Photographic Records means film, tapes, discs or similar media customarily used by the Insured for recordkeeping in the conduct of its business.

(25) Electronic Information means any information that is directly useable by a Computer. This includes Electronic Data and Computer Programs stored on punched cards, magnetic tapes, punched tapes, magnetic discs, optical disks or any other media directly accessible and usable by the Insured's Computer System.

(29) Electronic Signatures means an Electronic sound, symbol or process attached to or logically associated with an Electronic Record and executed or adopted by a person with the intent to sign the Electronic Record.

(58) Telefacsimile Device means a machine capable of sending or receiving a duplicate image of a document by means of electronic impulses transmitted through a telephone line and which reproduces the duplicate image on paper.

(65) Writing and Written means printed, typewritten or otherwise intentionally reduced to tangible form. They do not include an Electronic Record.

Doc. 12 at 14, Doc. 12-1 at 17-22 (emphasis omitted).[2]

10. On May 6, 2009, MBT received a faxed wire transfer request which was printed by an MBT employee. Doc. 12 at ¶ 8-9.

11. MBT asserts that it suffered a loss as a direct result of this wire transfer request. Doc. 12 at ¶ 11.

**B. Insurance Contract Interpretation**

In a diversity case, federal courts apply the substantive law of the state in which they sit. *Erie RR. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). Missouri law requires the Court to interpret an insurance contract by giving words their ordinary meanings absent a different intended meaning. *Farmland Indus. v. Republic Ins. Co.,* 941 S.W.2d 505, 508 (Mo. 1997). A word's ordinary meaning is that which the "average layperson would reasonably understand." *Id.* Ambiguities are resolved in favor of the insured. *See, e.g., Burns v. Smith,* 303 S.W.3d 505, 508 (Mo. 2010) (noting the "long-settled black-letter law requiring ambiguities in a policy to be resolved in favor of the insured"). But courts should not strain to see ambiguities where they do not exist and should enforce policies as written when possible. *Todd v. Missouri United Sch. Ins. Council,* 223 S.W.3d 156, 163 (Mo. 2007).

---

[2] Terms that are defined are capitalized and in bold-face type in the FIB. The Court has omitted all emphasis but the capitalization remains. The Court notes this because Defendant took the time to note that Plaintiff's statement of facts quoted the FIB entirely in bold, which Defendant seems to suggest was intended to disguise the presence of defined terms.

**Discussion**

**A. The Wire Transfer Request Was Written/A Writing Under The Terms Of The FIB**

The pending Motion centers on Plaintiff's argument that the fax at issue is excluded from the definition of an "Electronic Record." The FIB defines an Electronic Record as "information which is created, generated, sent, communicated, received or stored by electronic means *and* is retrievable in perceivable form." Doc. 12-1 at 19 (emphasis added). Written/Writing mean "printed, typewritten or otherwise intentionally reduced to tangible form" and excludes Electronic Records. *Id.* at 22. The exclusivity of the Written/Writing definition requires the Court to first determine whether the fax at issue was an Electronic Record. If so, then by definition it cannot be a Writing or Written, even if it was intentionally reduced to tangible form and would otherwise fit the Written/Writing definition. Since Plaintiff concedes that faxes are sent and received by electronic means, the Court will focus on whether the fax was "retrievable in perceivable form." Defendant asserts that these specific definitions have never been interpreted by a court. Looking at the definition of perceivable and its root, the Court finds that a thing is perceivable if one is capable of becoming aware of it through the senses. *Webster's Third New International Dictionary* 1675 (2002). A thing is retrievable if it is capable of being possessed. *Id.* at 1940. Accordingly, once a thing is possessed, it is no longer retrievable; it has been retrieved. The wire transfer at issue in this case came in "through [MBT's] telephone line and [the fax machine] reproduce[d] [a] duplicate image on paper," as stated in the FIB's definition of a "Telefacsimile Device." Doc. 12-1 at 21. At that point, though the original wire transfer request or a copy may have been retrievable—either by requesting it from the sender or by printing out another copy from the fax machine's memory—MBT's copy was retrieved. Accordingly, the Court finds that the wire transfer request received by MBT was not an

Electronic Record under the terms of the FIB. Since paper is tangible and the parties agree that a fax machine produces copies of documents on paper, the wire transfer request was intentionally reduced to tangible form, either by the party sending it by fax or by the MBT employee who retrieved it. Accordingly, it was a Writing/Written under the terms of the FIB.

In resisting this conclusion, Defendant relies on a case involving forged personal guarantees, *BancInsure, Inc. v. Marshall Bank, N.A.,* 400 F. Supp. 2d 1140 (D. Minn. 2005). The applicable insuring agreement at issue in *BancInsure s*tated that a "mechanically reproduced facsimile signature is treated the same as a handwritten signature." *Id.* at 1142. As the Eighth Circuit noted in affirming *BancInsure*, "the clause at issue speaks to what type of *signature* is acceptable. It does not, however, except the bank from maintaining actual physical possession of the original guarantee; indeed, the bond specifically requires such possession." *BancInsure, Inc. v. Marshall Bank, N.A.* (*BancInsure II),* 453 F.3d 1073, 1076 (8th Cir. 2006) (emphasis in original). No such explicit requirement is found in Insuring Agreement (D) of the FIB. For this reason, the Court finds *BancInsure* inapplicable.

### B. The Court Has No Basis To Find Insuring Agreement (K) Provides The Sole Avenue Of Coverage For Losses Related To Faxes

Defendant urges the Court to find that Insuring Agreement (K) provides the exclusive coverage for losses related to a fax. Insuring Agreement (K) is noted on the declarations page of the FIB, with "Telefacsimile, Email and Voice Instruction Transactions Coverage" included. Doc. 12-1 at 4. The relevant portion of Insuring Agreement (K) provides indemnity as follows:

> "**Telefacsimile, Email and Voice instruction Transactions Coverage**
>
> If Telefacsimile, Email and Voice Instruction Transactions Coverage is indicated as included under Insuring Agreement (K) in the Table of Single Loss Limits of Indemnity and Deductible Amounts of this Bond:
>
> Loss resulting directly from having in good faith:

7

(1) transferred funds on deposit in a Customer's account, Certificated Securities or Uncertificated Securities in reliance upon a fraudulent Telefacsimile Device instruction directed to the Insured, which purports and reasonably appears to be from a Customer of the Insured; another financial institution; or another office or Premise of the Insured; but, in fact was not originated by the Customer, another financial institution or another office or Premise of the Insured and purports and reasonably appears to contain the handwritten signature of a person authorized to initiate such transfer, or a valid test code, that proves to have been used by an unauthorized person…

Provided that with regard to Telefacsimile, Email and Voice Instruction Transactions Coverage:

(a) if the transfer was in excess of the Deductible Each and Every Loss for Insuring Agreement (K) as set forth on the Table of Single Loss Limits of Indemnity and Deductible Amounts of this Bond, the instruction was verified by a call back or other Electronic verification according to a prearranged procedure; and

(b) if the instruction purports to be from a Customer of the Insured, the term "Customer" within Telefacsimile, Email and Voice Instruction Transactions Coverage means an entity or natural person which has a Written agreement with the Insured authorizing the Insured to rely on voice instructions or instructions received via email to make transfers and which has provided the Insured with the names of persons authorized to initiate such transfers and with which the Insured has established an instruction verification mechanism."

Doc. 12-1 at 10-11. OneBeacon urges that the canon of construction *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of other alternatives—should lead the Court to find that coverage for losses directly related to a fax must come only from Insuring Agreement (K). Defendant provides little support for this position, but the Court notes that Missouri courts apply this maxim when "an ambiguity arises from them words themselves."[3] *Gasconade Cty. Counseling Svcs., Inc. v. Missouri Dept. of Health,* 314 S.W.3d 368, 375 (Mo. Ct. App. 2010). The Court finds no inherent ambiguity in the relevant portions of the FIB. If

---

[3] Furthermore, the Court questions how far it can stretch this maxim. *See* Reed Dickerson, *The Interpretation and Application of Statutes* 234-35 (1975) (noting that "[f]ar from being a rule, [the maxim] is not even lexicographically accurate, because it is simply not true, generally, that the mere express conferral of a right…in one kind of situation implies the denial of the equivalent right…in other kinds…Accordingly, the maxim is at best a description, after the fact, of what the court has discovered from context.").

8

Insuring Agreement (K) had been intended to provide the lone source of coverage for losses related to faxes, it could easily have contained such language.  By the same token, Insuring Agreement (D) could have included language clearly excluding losses related to faxes or the definition of Electronic Record could have specifically included faxes.  But such provisions do not exist.

**Conclusion**

The Court finds that the wire transfer request falls within the Written/Writing definition of the FIB, and not the definition of Electronic Record.  Furthermore, the Court finds no basis on which to hold that Insuring Agreement (K) has exclusive authority over all issues related to faxes.  This conclusion inexorably leads the Court to the finding that OneBeacon must indemnify MBT for this loss pursuant to Insuring Agreement (D), specifically subsection (2).  Accordingly, Plaintiff's Motion is GRANTED.

**IT IS SO ORDERED.**

Date:  October 28, 2010                              /s/ Greg Kays
                                                                  GREG KAYS,
                                                                  UNITED STATES DISTRICT JUDGE