IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MISSOURI BANK AND TRUST COMPANY OF KANSAS CITY, ) ) ) | |
| Plaintiff, ) | Case No. 10-00123-CV-W-DGK |
| ) v. ) ) | |
| ONEBEACON INSURANCE COMPANY, ) ) | |
| Defendant. ) | |

### ORDER FINDING ONEBEACON NOT LIABLE TO MBT FOR VEXATIOUS REFUSAL TO PAY

On February 11, 2010, Missouri Bank and Trust ("MBT") filed suit against OneBeacon Insurance Company (OneBeacon), alleging that OneBeacon breached the terms of the parties' agreement in denying MBT coverage for a loss based on a fraudulent faxed wire transfer request (Doc. 1). On October 28, 2010, the Court granted MBT summary judgment on the merits of its contract claim relating to the Financial Institution Bond ("FIB") (Doc. 22). On February 23, 2011, MBT moved for partial summary judgment on two issues: 1) the amount of damages it was entitled as a result of Defendant's breach of the FIB; and 2) OneBeacon's vexatious refusal to indemnify MBT for its undisputed loss (Doc. 35). OneBeacon cross-filed a motion for summary judgment on the second issue (Doc. 43). On July 29, 2011, the Court granted MBT's motion for damages as a result of Defendant's breach of the FIB and denied both parties' motions for summary judgment on the vexatious refusal claim (Doc. 51).

Pending before the Court is the parties' joint motion for a judgment on the merits of MBT's vexatious refusal claim against OneBeacon under Mo. Rev. Stat. §§ 375.420 and 375.296 (Doc. 52). Pursuant to a joint stipulation, the parties have agreed that neither will present any

additional evidence beyond that already submitted to the Court in the parties' respective motions for summary judgment on this claim. *Id*. The Court has reviewed this Motion in conjunction with the parties' previous motions for summary judgment (Docs. 32, 35, 42, 43, 47). For the reasons discussed below, the Court finds that Defendant OneBeacon did not vexatiously refuse to pay MBT's claim.

## Background

On October 20, 2008, OneBeacon sold an FIB to MBT for a premium in excess of $18,000. The FIB became immediately active and is effective through October 21, 2011. OneBeacon also issued MBT a Management and Professional Liability Policy ("MPLP") for a premium in excess of $19,000.

On May 6, 2009, MBT employees executed an international wire transfer to Korea Exchange Bank in the amount of $196,575. After discovering that the transfer request was forged, MBT reversed the transfer and refunded the customer's account. However, Korea Exchange Bank had already released the funds.

MBT immediately demanded indemnity or coverage of this loss pursuant to the FIB and/or MPLP, claiming a recoverable loss of $171,575, which reflects the actual $196,575 loss minus the relevant $25,000 deductible. OneBeacon denied coverage on July 6, 2009, based on Insuring Agreement (K). It then confirmed its denial of coverage on August 26, 2009. After the second denial of coverage, MBT requested that OneBeacon analyze its coverage under Insuring Agreement (D). On September 15, 2009, OneBeacon again denied coverage under this policy, writing that "the International Wire Transfer Request does not constitute one of the types of documents covered under Insuring Agreement (D)." The letter was drafted by OneBeacon's underwriters and independent expert Eric Emmett. OneBeacon claims that it reached its decision

2

to deny MBT's claim after consideration by several OneBeacon employees, including Marvin Alexander and Kerry Evenson, both of whom are attorneys.

OneBeacon has been writing bonds of this type for approximately six years. OneBeacon believes that MBT's claim is the first it has received involving a forged or fraudulent fax. In making its decision to deny MBT's claim, OneBeacon did not consult legal counsel. OneBeacon concedes that the insuring agreements in the FIB are not exclusive, and that in considering claim coverage, more than one insuring agreement may apply. OneBeacon also admits that there is no evidence indicating that it considered coverage under multiple insuring agreements until asked to do so.

## Standard

Missouri law provides penalties for an insurer's vexatious refusal to pay. *See* Mo. Rev. Stat. § 375.420 ("[I]f it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee…"); *see also* Mo. Rev. Stat. § 375.296 (directing damages and fees under section 375.420). In order to succeed on a claim of vexatious refusal to pay, a plaintiff must show "(1) the claimant made a demand; (2) the insurer failed or refused to pay for a period of thirty days after the demand; and (3) the refusal to pay was vexatious and without reasonable cause." *Tauvar v. American Family Mut. Ins. Co.,* 269 S.W.3d 436, 439 (Mo. Ct. App. 2008).

The vexatiousness or lack of reasonableness of the insurer's refusal is a question of fact. *Shirkey v. Guarantee Trust & Life Ins. Co.,* 258 S.W.3d 885, 887 (Mo. Ct. App. 2008). Sections

375.296 and 375.420 are highly penal and must be strictly construed. *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 387 (Mo. Ct. App. 1999). In order to qualify as vexatious, "the insured must show that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." *Russell v. Farmers & Merchants Ins. Co.,* 834 S.W.2d 209, 221 (Mo. Ct. App. 1992). Merely showing that the insurer should have paid does not entitle the insured to the benefit of the vexatious refusal statute. *Id.* Where an insurer has reasonable cause to believe it has a meritorious defense to a claim for payment, the court may not award damages for vexatious refusal to pay. *Thornburgh Insulation, Inc. v. J.W. Terrill, Inc*., 236 S.W.3d 651, 657 (Mo. Ct. App. 2007).

## Discussion

The Court has already determined that the wire transfer request at issue in this case was a writing under the terms of the FIB and is therefore covered by the parties' agreement under Insuring Agreement (D). The only remaining issue is whether OneBeacon's refusal to pay MBT's claim was vexatious.

**A. Plaintiff made a demand for payment and Defendant failed or refused to pay for a period of thirty days after the demand.**

As the Court notes in its July 2009 Order (Doc. 51), the first two elements of a vexatious refusal to pay claim are not in dispute. The material facts establish that MBT submitted a claim for payment on June 16, 2009. OneBeacon denied that claim three times within a period of four months. Thus, the Court finds that the first two elements of a vexatious refusal to pay claim are established.

4

**B. OneBeacon's denial of payment was not vexatious.**

The only remaining issue is whether OneBeacon's denial of MBT's claim was "vexatious and without reasonable cause." *Tauvar*, 269 S.W.3d at 439. This is an objective inquiry, and the Court must determine whether OneBeacon's denial is supported by objective reasonable cause or excuse. *Browning v. GuideOne Specialty Mut. Ins. Co.*, 341 S.W.3d 897, 903 (Mo. Ct. App. 2011). The Court finds that given the record, there is not sufficient evidence to find that OneBeacon's refusal of MBT's claim was vexatious.

MBT argues that OneBeacon's refusal of its claim was unreasonable. First, MBT maintains that OneBeacon's position was *a priori* unreasonable in light of the clear language of the insurance policy. Alternatively, MBT argues that OneBeacon's failure to investigate the claim and failure to consider other potential avenues of coverage was vexatious.

As the Court held in its July 2011 Order (Doc. 51), the record does not support MBT's contention that OneBeacon failed to properly investigate its claim. To the contrary, the record establishes that OneBeacon promptly responded to MBT's claim and fully explained the reasoning behind its decision (Dep. Exs. 6-7). In its July 6, 2009 letter, for example, OneBeacon recited its reasons for denying MBT's claims, stating that MBT did not follow the "call back or other Electronic verification according to a prearranged procedure" as required by the Insuring Agreement (Dep. Ex. 6). In addition, in its August 2009 letter, OneBeacon included a one and half page single-spaced recitation of the facts it relied upon in making its decision to deny MBT's claim.

Plaintiff also argues that OneBeacon failed to follow its own policy of considering all possible avenues of coverage when reviewing a claim. This assertion, however, does not change the fact that OneBeacon fully and promptly considered coverage under Insuring Agreement (K),

5

and when asked, fully and promptly considered coverage under Insuring Agreement (D). Accordingly, the Court cannot find that OneBeacon's conduct in considering MBT's claim gives rise to liability for vexatious refusal to pay.

The reasonableness of OneBeacon's substantive position in light of the policy language is a closer question. Missouri law is clear that the vexatiousness of an insurer's action is a question of fact. However, both parties agree that there is significant authority supporting both sides of this issue. As the Court noted in its July 2011 Order:

> Numerous facts cut both ways. For example, when considering the fact that OneBeacon had never reviewed this type of claim before, a jury might think that they should have undertaken a much deeper review of the policy. Conversely, another jury might give OneBeacon the benefit of the doubt in light of the relative uniqueness of the claim. Such is the nature of a fact issue like "reasonableness" (Doc. 51).

Insurers are allowed to insist on a judicial determination of an open question of law without penalty. *Wood v. Safeco Ins. Co. of America,* 980 S.W.2d 43, 55 (Mo. Ct. App. 1998). "A litigable issue exists, for instance, when there are no Missouri cases directly addressing the coverage issue." *Id.* (citing *Webb v. Hartford Casualty Inc. Co.,* 956 S.W.2d 272, 276 (Mo. Ct. App. 1998)). However, even in the absence of authority, insurers are not permitted to demand judicial resolution of an issue unless they have both a subjective and an objectively reasonable belief that there is not coverage or that they have a defense. *Smith ex rel. Stephan v. AF & L Ins. Co.,* 147 S.W.3d 767, 778 (Mo. Ct. App. 2004).

MBT argues that OneBeacon "blatantly ignored the language of its own insurance policy" in taking the unreasonable position that the insuring agreements were exclusive and that a fax was not a writing under the FIB (Doc. 35). Regarding the exclusivity of the insuring agreements, the Court rejected OneBeacon's argument that Insuring Agreement (K) was the sole basis of coverage for faxes. OneBeacon also now admits that the FIB's insuring agreements are

6

*not* exclusive. However, these findings, although establishing that OneBeacon's original position was incorrect, do not establish that it was necessarily unreasonable or vexatious. Rather, OneBeacon took the arguably reasonable position that Insuring Agreement (K) was the exclusive means of coverage. This Court finds this position reasonable because upon initial consideration, Insuring Agreement (K) does seem to encompass the transaction at issue in this case: transferring funds on deposit in a Customer's account in reliance upon a fraudulent Telefacsimile Device. Furthermore, OneBeacon's prompt consideration of the possibility that the fax might be covered under Insuring Agreement (D) evidences a lack of unreasonableness or vexation.

OneBeacon also took the position that a fax was an electronic record under its policy, and was therefore not covered by Insuring Agreement (D) which excludes "electronic signatures." The Court concluded, however, that the fax at issue in this case was covered under Insuring Agreement (D). "[W]hile faxes are certainly sent by electronic means, the terms of the policy showed that in this situation, the wire transfer was a 'Writing/Written' because it had been 'intentionally reduced to tangible form, either by the party sending it by fax or by the MBT employee who retrieved it'" (Doc. 22).

Again, the Court does not find OneBeacon's position vexatious merely because it reached a different conclusion. When there is an open question of law or fact, insurance companies may insist on judicial determination of the issue without penalty. *Wood*, 980 S.W.2d at 55. At the time OneBeacon's determination was made, the question of whether a faxed wire transfer request was "written" as the term is defined by the OneBeacon FIB was an open question. Neither party has produced any cases, in Missouri or elsewhere, that consider the precise question at issue in this case. In addition, given that electronic records are explicitly excluded from the definition of

7

writing/written, the Court finds that OneBeacon could have reasonably determined that a fax was an electronic record not covered under Insuring Agreement (D).

Similarly, we decline to find that OneBeacon's attitude was vexatious and recalcitrant. *Wood*, 980 S.W.2d at 55.  Evidence that supports this finding includes OneBeacon's willingness to accept an email in lieu of a sworn formal Proof of Loss, OneBeacon's prompt response to MBT's claims, and OneBeacon's willingness to consider other possible means of coverage when requested.

## Conclusion

The Court has determined that OneBeacon's denial of MBT's claim was not vexatious as a matter of law or fact.  Although the Court ultimately interpreted OneBeacon's policy in a manner inconsistent with OneBeacon's position, it does not find that original position unreasonable such that OneBeacon's denial of MBT's claims is vexatious.  For the foregoing reasons, the Court holds that OneBeacon is not liable to MBT for vexatious refusal to pay.

**IT IS SO ORDERED.**

Date: October 18, 2011                         /s/ Greg Kays
                                               GREG KAYS, JUDGE
                                               UNITED STATES DISTRICT COURT